ESIS, INC., SERVICING CONTRACTOR,
Appellant,

v.

Billy Carl JOHNSON and Texas Workers'
Compensation Commission,
Appellees.

No. 2–94–180–CV.

Court of Appeals of Texas,
Fort Worth.

Sept. 28, 1995.

Rehearing Overruled Nov. 2, 1995.

Swift, Bell & Dorman, and Carolyn Mitchell, Fort Worth, for Appellant.

Jim Lane, Fort Worth, for Appellee Billy Carl Johnson.

Dan Morales, Attorney General of Texas, Jorge Vega, First Assistant Atty. Gen., Delmar Cain, Chief, Tort Litigation, and Harry Deckard, Assistant Atty. Gen., Austin, for Appellee Texas Workers' Compensation Commission.

Before CAYCE, C.J., and LIVINGSTON and CHUCK MILLER (Assigned), JJ.

## OPINION

CAYCE, Chief Justice.

This is a workers' compensation case tried under the new Texas Workers' Compensation Act, Tex.Lab.Code Ann. §§ 401.001 *et* *seq.* (Vernon Pamph.1995). The Texas Workers' Compensation Appeals Panel determined that appellee, Billy Carl Johnson, sustained an injury in the course and scope of his employment. On appeal to the district court, the jury affirmed the appeals panel decision by finding that the injury was in the course and scope of Johnson's employment.

In this appeal, appellant ESIS, Inc., Servicing Contractor ("ESIS") alleges in four points of error that Johnson was not in the course and scope of his employment when he sustained the injury; the trial court erred in admitting into evidence the appeals panel opinion; the trial court erred in excluding evidence that Johnson had consumed half a beer prior to his injury; and, the trial court erred in permitting the Texas Workers' Compensation Commission to intervene in the case.

We overrule the points of error and affirm the judgment of the trial court.

### I.

The evidence admitted at trial showed that on or about March 11, 1991, Johnson, a jailer for the Tarrant County Sheriff's Department, was cleaning his service revolver at his residence at approximately 9:15 p.m. when he accidentally discharged his revolver into his left leg and foot. Johnson had reloaded the revolver after cleaning it and left the room temporarily. When he returned, he saw oil dripping from the revolver. He then picked it up, spun the cylinder to disperse the oil, and, having forgotten that he reloaded it, pulled the trigger.

Following his injury, Johnson made a claim for workers' compensation benefits under Tarrant County's self-insured policy managed by ESIS. The case then proceeded through the administrative process outlined in the Texas Labor Code. *See* Tex.Lab.Code Ann. §§ 410.001 *et seq.* First, a benefit review conference was held wherein the benefit review officer found that the injury was within the course and scope of Johnson's employment. Later, a contested case hearing was held in which the hearing officer found that the injury was not in the course and scope of Johnson's employment. The Texas Workers'

Compensation Commission Appeals Panel reversed the findings of the contested case hearing officer and held that the injury was received in the course and scope of Johnson's employment as a matter of law.

The appeals panel decision was appealed to the 141st Judicial District Court of Tarrant County, Texas and proceeded to a jury trial on the sole issue of whether the injury was in the course and scope of Johnson's employment. The jury returned a verdict that upheld the decision of the appeals panel, and judgment was rendered on the verdict.

## II.

■ In its first point of error, ESIS contends that Johnson was not in the course and scope of his employment when he sustained his injury "as a matter of law." The test for "matter of law" points is whether the evidence establishes the critical fact conclusively,[1] leaving nothing for the jury to decide. In a case where a proponent attacks a jury's failure to find in its favor, arguing that the evidence on the fact question is conclusive, the reviewing court first looks to see whether there is some evidence which supports the adverse finding. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX.L.REV. 515, 517–18 (1991); *see* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 TEX.L.REV. 361, 362–63 (1960). If no evidence supports the adverse finding, the reviewing court then examines the entire record to determine whether the evidence conclusively established all vital facts in support of the proposition as a matter of law. Powers & Ratliff, *supra,* at 523–24; *see, e.g., Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989); *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696–97 (Tex. 1986); *Holley v. Watts,* 629 S.W.2d 694, 696–97 (Tex.1982). If the issue is established conclusively by the evidence, the point must be sustained. *See Meyerland Community Improvement Ass'n v. Temple,* 700 S.W.2d

263, 267 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

In the trial court, ESIS had the burden of proving by a preponderance of the evidence that Johnson did *not* receive an injury in the course and scope of his employment. *See* TEX.LAB.CODE ANN. § 410.303. Therefore, we will begin our review of the record with a search for evidence that supports the jury's finding that he *did* receive his injury in the course and scope of his employment.

The Texas Workers' Compensation Act provides a two-part definition of course and scope of employment: 1) "an activity of any kind or character that has to do with and originates in the work, business, trade, or profession of the employer," and 2) "performed by an employee while engaged in or about the furtherance of the affairs or business of the employer." *Id.* § 401.011(12); *see Biggs v. United States Fire Ins. Co.,* 611 S.W.2d 624, 627 (Tex.1981). The term includes activities conducted on the premises of the employer "or at other locations." TEX. LAB.CODE ANN. § 401.011(12).

■ Course and scope of employment is not limited to the exact moment when the employee reports for work, the moment when the employee's labors are completed, nor to the place where work is done. *See Deatherage v. International Ins. Co.,* 615 S.W.2d 181, 183 (Tex.1981). If the injury is the result of an activity that originates from the employment, and is received while the employee is actually engaged in furthering the employer's business, the injury is deemed to have been sustained within the course and scope of employment. TEX.LAB.CODE ANN. § 401.011(12); *see Deatherage,* 615 S.W.2d at 183. An injury originates from the employment when it results from a risk or hazard that is reasonably inherent or incident to the work or business. *Lumberman's Reciprocal Ass'n v. Behnken,* 112 Tex. 103, 110, 246 S.W. 72, 73 (1922).

■ Having reviewed the evidence supporting the jury's affirmative course and

---

1. Some courts of appeals have, in fact, referred to these points as "conclusive evidence" points. *See, e.g., City of Dallas v. Moreau,* 718 S.W.2d 776, 778 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.); *Kerrville Indep. Sch. Dist. v. South-* *west Texas Encampment Ass'n,* 673 S.W.2d 256, 260 (Tex.App.—San Antonio 1984, writ ref'd n.r.e.); *Harrison v. Harrison,* 597 S.W.2d 477, 485 (Tex.Civ.App.—Tyler 1980, writ ref'd n.r.e.).

scope finding, we conclude that it is sufficient to establish that Johnson sustained his injury while in the course and scope of his employment as a jailer with the Tarrant County Sheriff's Department. .It is undisputed that Johnson was required to possess a firearm and carry it while on duty. The evidence further shows that sheriff department policy directives required that the weapon be maintained in good working condition and routinely cleaned. According to the jail administrator, Jim Minter, all county jailers were required to own a weapon, and each officer had the responsibility for cleaning and maintaining his or her own weapon. Because the sheriff's department did not provide an area at the jail for officers to clean their weapons, Officer Minter testified that the officers were permitted to clean their weapons at home or "anywhere," as long as they showed up for work each day with a clean weapon. This uncontroverted evidence is sufficient to establish that Johnson's injury was of a kind or character originating in or having to do with his duties as a jailer with the sheriff's department, and that the injury occurred while he engaged in the furtherance of his employer's business.

ESIS contends that *Banfield v. City of San Antonio,* 801 S.W.2d 134 (Tex.App.— San Antonio 1990, no writ), is controlling. *Banfield,* however, is clearly distinguishable from this case. In *Banfield,* a San Antonio police officer was shot at home when her minor child picked up the officer's weapon from her dresser and it accidentally discharged while the officer was preparing for bed. The San Antonio Court of Appeals held that her injury was not compensable because the police officer was not discharging any official duty as a San Antonio police officer at the time of her injury. *Id.* at 136. Unlike the officer in *Banfield,* Johnson was engaged in an activity which was required by the sheriff's department at the time he was shot. Therefore, the activity in which Johnson was engaged constituted furtherance of his employer's business affairs.

ESIS's reliance on *Texas General Indem. Co. v. Bottom,* 365 S.W.2d 350 (Tex.1963), is also misplaced. In *Bottom,* a truck driver was killed in a traffic accident while travel-ling from his home to his place of employment. The decedent owned the truck in which he was travelling and leased it to his employer. Under the lease agreement the decedent was required to keep the truck properly maintained. The evidence showed that immediately prior to the accident, the decedent had had his truck serviced.

The Supreme Court of Texas found that although "[i]t was [the decedent's] duty as lessor to keep the lease vehicle in proper condition ... the employment contract did not contemplate or require that he subject himself to road hazards for the purpose of maintaining trucks ... leased by [his employer]." *Id.* at 354. According to the court, "[t]aking the truck to Hillsboro or elsewhere to have it serviced was not part of his job as driver, and there is no evidence that he was on a special mission for his employer." *Id.* Therefore, the court held the decedent's fatal injuries had nothing to do with the business of his employer, but instead, resulted "from hazards which he as a member of the traveling public encountered in making the trip to see his wife and to have the truck serviced in accordance with the lease agreement." *Id.*

We do not read *Bottom* as holding that an employee injured while engaged in routine maintenance required by his employer is not engaged in activities that fall within the course and scope of employment. *Bottom* is expressly governed by the general rule that an injury received while using the public streets and highways in going to or returning from the place of employment is not compensable, because such an injury is suffered as a consequence of risks and hazards to which all members of the travelling public are subject. In this case, however, Johnson was not taking the gun to his home or elsewhere to have it cleaned at the time of his injury. Rather, his injury occurred at precisely the time he was performing maintenance on his revolver in furtherance of his job as a jailer.

Point of error one is overruled.

### III.

In its second point of error, ESIS complains of the admission into evidence of the appeals panel opinion. Our determination of this point requires that we briefly review

relevant portions of the new Texas Workers' Compensation Act.

In 1989 the legislature enacted a new Workers' Compensation Act restructuring workers' compensation in Texas. The Act significantly departs from prior law with regard to the adjudicatory powers of the Texas Workers' Compensation Commission. Under the Act, the commission now resolves disputed claims through a three-stage hearing process: 1) the benefit review conference, 2) the contested hearing, and 3) the administrative appeal. The procedures involved in this process have been examined by the Supreme Court of Texas under both the federal and state constitutions and declared to be constitutional. *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504 (Tex. 1995).

The benefit review conference, like the former prehearing conference, is an informal proceeding aimed at resolving the disputed issues by mutual agreement. TEX.LAB.CODE ANN. § 410.021. The presiding "benefit review officer," after informing the parties of their rights and responsibilities, mediates a dispute. *Id.* § 410.026(a). The officer may direct questions to the parties, but he or she may not take testimony or make a formal record. *Id.* § 410.026(c), (d). The officer does, however, prepare a written report detailing each issue not settled at the conference. *Id.* § 410.031. This report must include the officer's recommendation regarding those issues and a recommendation regarding the payment or denial of benefits. *Id.*

The parties then proceed to a "contested case hearing," a formal evidentiary proceeding with sworn testimony and prehearing discovery procedures.[2] *Id.* §§ 410.151–.169. The hearing officer decides the disputed issues by written decision containing factual and legal findings. *Id.* § 410.168(a). The hearing officer's decision is binding during the pendency of an administrative appeal and

is final in the absence of appeal. *Id.* § 410.169.

Any party may appeal the hearing officer's decision to an appeals panel within the commission. *Id.* § 410.202. The request for appeal and the opposing party's response must "clearly and concisely rebut or support the decision of the hearing officer on each issue on which review is sought." *Id.* § 410.202(c). After considering these briefs and the record from the contested case hearing, the appeals panel may affirm the decision of the hearing officer, reverse and render a new decision, or remand no more than one time to the hearing officer for further consideration and development of the record.[3] *Id.* § 410.203.

The Act disposes of a trial de novo from the commission's ruling. Instead, the commission's final decision may be appealed to the courts under what the Supreme Court of Texas has described as "modified de novo review." *Garcia*, 893 S.W.2d at 530. Under this modified de novo review, all issues regarding compensability of the injury (such as whether it occurred in the course and scope of employment) may be tried by jury. *Id.* at 528; *see* TEX.LAB.CODE ANN. §§ 410.301, 410.304. The party appealing the commission's ruling bears the burden of proof by a preponderance of the evidence. TEX.LAB. CODE ANN. § 410.303.

Notably, the Act contains two provisions that govern the admissibility of the commission's decision and record in a jury trial. The first requires the court to "inform" the jury of the commission appeals panel "decision" in the court's charge:

**§ 410.304. Consideration of Appeals Panel Decision**

(a) In a jury trial, the court, before submitting the case to the jury, shall inform the jury in the court's instructions, charge, or questions to the jury of the commission appeals panel decision on each disputed issue described by Section 410.301(a) that is submitted to the jury.

---

2. The parties may mutually elect binding arbitration as an alternative to the contested case hearing. *Id.* § 410.104.

3. If the appeals panel does not decide the case within thirty days after the response is filed, the decision of the hearing officer becomes final and

*Id.* § 410.304.[4] This provision is mandatory. The jury, however, is not required to accord the decision any special weight. *Garcia,* 893 S.W.2d at 528.

In addition, section 410.306(b) allows the admission into evidence of the commission's "record." TEX.LAB.CODE ANN. § 410.306(b). The commission's record is comprised, in part, of the written opinion containing the commission appeals panel decision.

In the present case, the trial court admitted into evidence the full text of the commission appeals panel opinion over ESIS's objection. The court also instructed the jury in its charge "that the Commission Appeals Panel decided that Billy Carl Johnson was injured in the course and scope of his employment."

ESIS complains that the express language of section 410.304 precludes the admission of the appeals panel opinion because the statute states that the court "shall inform the jury in the court's instructions, charge, or questions to the jury of the commission appeals panel decision," without any reference to introducing the "opinion" into evidence. *Id.* § 410.304(a). Since it is the trial court's responsibility to "inform" the jury of the "decision" in its charge, ESIS argues that it is improper to admit the written "opinion" into evidence.

In construing a statute, we are guided by the general rules of statutory construction and by cases interpreting the statute, if any. The general rules of construction are: 1) the court must be governed by the rule of common sense, *HSAM, Inc. v. Gatter,* 814 S.W.2d 887, 888 (Tex.App.—San Antonio 1991, writ dism'd by agr.) (op. on reh'g); 2) the court must look to the intent of the legislature in enacting the statute, *Monsanto Co. v. Cornerstones Mun. Utility Dist.,* 865 S.W.2d 937, 939 (Tex.1993); 3) the court must construe a statute as written, and, if possible, ascertain its intention from the language used therein and not look to extraneous matters for an intention not stated in the statute, *Seay v. Hall,* 677 S.W.2d 19, 25 (Tex.1984); 4) if a statute is subject to two

interpretations, it should not be given one that would render enforcement impossible, *see Sharp v. House of Lloyd, Inc.,* 815 S.W.2d 245, 249 (Tex.1991); and 5) the general rules for the construction of all written instruments apply to the construction of legislative acts, *Baylor Univ. Medical Ctr. v. Borders,* 581 S.W.2d 731, 733 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). *See* TEX.GOV'T CODE ANN. § 311.003 (Vernon 1988).

Applying these standards, we hold that the commission appeals panel "opinion" is admissible as evidence in a jury trial under section 410.306(b) of the Act, even though the jury is informed of the panel's "decision" in the court's charge pursuant to section 410.304. ESIS's argument completely ignores section 410.306(b), which expressly states that the "commission's record" is admissible to the extent allowed under the Texas Rules of Civil Evidence. TEX.LAB.CODE ANN. § 410.306(b). It is undisputed that the appeals panel opinion is part of the commission record maintained on Johnson's claim for workers' compensation benefits. As part of the commission record, it is admissible under the Act. Section 410.306(b) provides no exception for appeals panel opinions, and we refuse to make such an exception to the statute by judicial fiat.

ESIS argues that it was unfair to admit the opinion into evidence because the jury accorded it special weight. However, there is nothing in the record even remotely suggesting that the jury accorded any particular weight to the decision. We have no reason to believe that the jury placed more weight on the opinion than on the other evidence, which we have found to be sufficient to support the affirmative course and scope finding.

We recognize that permitting the jury to read the appeals panel opinion may have a limiting effect on the jury's fact-finding role that is not found in a pure trial de novo. In *Garcia,* however, the supreme court held that the mandatory procedure of "informing" the jury of the commission's "decision" does not infringe on the right to trial by jury

---

is deemed to constitute the decision of the appeals panel. *Id.* § 410.204.

4. In a bench trial, the court shall consider "the decision of the commission appeals panel" in rendering its judgment. *Id.* § 410.304(b).

because the jury is not required to place any particular weight on the decision. *Garcia,* 893 S.W.2d at 528. Following this rationale, we conclude that the admission of the written "opinion" containing the appeals panel decision did not impinge on the jury's discretion in deciding the relevant factual issues in this case to any greater extent than did the submission of the "decision" in the court's charge.

As a further ground for excluding the appeals panel decision, ESIS contends that the decision was inadmissible because the copy admitted into evidence was not certified. Section 410.306 of the Act provides that the commission's record is admissible "to the extent allowed under the Texas Rules of Civil Evidence." TEX.LAB.CODE ANN. § 410.306(b); *see also* TEX.R.CIV.EVID. 101 (Rules of Civil Evidence apply in all civil proceedings except as otherwise provided by statute).[5] Rule 901(a) requires the authentication or identification of a matter as a condition precedent to its admissibility; this requirement is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

 Generally, to prove the contents of a writing, a party is required to tender the original. TEX.R.CIV.EVID. 1002. However, a photocopy of an original is admissible to the same extent as the original unless its authenticity is questioned or its admission would be unfair. TEX.R.CIV.EVID. 1001(4), 1003. A copy of a public record is considered authentic if a sponsoring witness vouches for its authenticity or if the document meets the certification requirements for self-authentication contained in Rule 902. TEX.R.CIV.EVID. 1005; *see Castro v. Sebesta,* 808 S.W.2d 189, 195 (Tex.App.—Houston [1st Dist.] 1991, no writ) (op. on reh'g).

 In this case, the copy of the appeals panel opinion was admitted into evidence without any testimony as to its authenticity, nor did it meet the requirements of self-authentication. Therefore, we find that the trial court abused its discretion in admitting the unauthenticated copy of the appeals panel opinion.

 However, we hold that the trial court's error in admitting the unauthenticated copy is harmless. As we have previously concluded, there was sufficient evidence apart from the opinion to support the jury's course and scope finding. After reviewing the entire record, we cannot say that the appeals panel opinion had any effect whatsoever on the jury's finding. Accordingly, we hold that the error complained of did not amount to such a denial of ESIS's rights as was reasonably calculated to cause the rendition of an improper judgment. TEX.R.APP.P. 81(b)(1); *see Browning–Ferris Indus., Inc. v. Lieck,* 845 S.W.2d 926, 943 (Tex.App.—Corpus Christi 1992) (en banc), *rev'd on other grounds,* 881 S.W.2d 288 (Tex.1994); *State v. Buckner Constr. Co.,* 704 S.W.2d 837, 846 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *Commonwealth Lloyd's Ins. Co. v. Thomas,* 678 S.W.2d 278, 295 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.).

Point of error two is overruled.

### IV.

In its third point of error, ESIS argues that the trial court erred in refusing to admit evidence showing that Johnson drank half a beer prior to his injury. During his deposition (taken after the appeals panel decision), Johnson testified that he drank half a beer when he first came home the evening of his injury. There is no evidence of Johnson's blood/alcohol level at the time of the accident.

The question of Johnson's alleged intoxication was not raised by ESIS at the benefit review conference or the contested case hearing, nor was it presented for review by the commission appeals panel. However, ESIS contends that it was entitled to present intoxication evidence for the first time in the trial court because intoxication is a defense to the course and scope of employment issue. Alternatively, ESIS contends that it should have been allowed to introduce the intoxication evidence under section 409.022 because it was "newly discovered" after the appeals panel decision.

---

5. All references to the rules are to the Rules of Civil Evidence.

"Intoxication" is defined in the Act, in pertinent part, as follows:

(a) In this subtitle, "intoxication" means the state of:

(1) having an alcohol concentration as defined by Article 6701l-1, Revised Statutes, of 0.10 or more; or

(2) not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of:

(A) an alcoholic beverage....

Tex.Lab.Code Ann. § 401.013. It is undisputed that intoxication is a defense to the issue of course and scope. *See March v. Victoria Lloyds Ins. Co.,* 773 S.W.2d 785, 787 (Tex.App.—Fort Worth 1989, writ denied) (citing *Texas Indem. Ins. Co. v. Dill,* 42 S.W.2d 1059, 1060 (Tex.Civ.App.—Eastland 1931), *aff'd,* 63 S.W.2d 1016 (Tex.Comm'n App.1933, judgm't adopted)).

Section 410.302 limits the scope of the issues that shall be considered by the trial court in an appeal from a commission appeals panel decision. This section provides as follows:

§ 410.302. Limitation of Issues

A trial under this subchapter is limited to issues decided by the commission appeals panel and on which judicial review is sought. The pleadings must specifically set forth the determinations of the appeals panel by which the party is aggrieved.

Tex.Lab.Code Ann. § 410.302. There is no provision in the Act authorizing the trial court to enlarge this scope of review by considering issues, or evidence probative of issues, that were not determined by the commission appeals panel.

■■■■■ We hold that the defense of intoxication must be raised by the employer in the administrative review process in order to preserve the issue for appeal to the trial court. In this case, ESIS failed to raise the defense of intoxication at any stage of the administrative review process. As a result,

the defense was waived, and the trial court was barred from adjudicating the issue on appeal. Therefore, we hold that the trial court did not abuse its discretion in refusing to introduce evidence on the defensive issue of Johnson's intoxication.

Relying on section 409.022, ESIS argues that it should have been allowed to litigate the intoxication issue because it constitutes "newly discovered evidence." ESIS complains that it did not learn that Johnson had consumed beer on the night of the incident until September of 1992, approximately six months after the appeals panel entered its decision. According to ESIS, this information could not be reasonably ascertained prior to the contested case or appeals panel hearings. However, there is no evidence in the record supporting this contention. The record, in fact, shows that during the administrative process ESIS's counsel had ample opportunity to discover information, through the exercise of reasonable diligence, from which she could have ascertained whether Johnson had been drinking beer at the time he accidentally shot himself.

■■■■ Even if ESIS could not have reasonably discovered Johnson's consumption of beer in time to raise it during the administrative hearing process, we hold that section 409.022 was not intended to authorize the introduction of "newly discovered evidence" at the judicial review stage of the proceedings. Section 409.022 describes the notice requirements that an insurance carrier must comply with when it initially denies payment of a claim.[6] These notice requirements are part of the compensation procedures governed by chapter 409 of the Act; they have no application or relevance to the dispute resolution or judicial review procedures contained in chapter 410. We find nothing in either chapter of the Act that grants a party the right to raise additional issues in the trial

---

6. Section 409.022 of the Labor Code states as follows:

(a) An insurance carrier's notice of refusal to pay benefits under Section 409.021 must specify the grounds for refusal.

(b) The grounds for the refusal specified in the notice constitute the only basis for the

insurance carrier's defense on the issue of compensability in a subsequent proceeding, unless the defense is based on newly discovered evidence that could not reasonably have been discovered at an earlier date.

Tex.Lab.Code Ann. § 409.022.

court that were not adjudicated by the commission or reviewed by the appeals panel.

Point of error three is overruled.

## V.

 In point of error four, ESIS complains that the trial court erred in permitting the Texas Workers' Compensation Commission to intervene because the commission has no justiciable interest in the suit as required by Rule 60 of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 60. Section 410.254, however, specifically authorizes the Texas Workers' Compensation Commission to intervene in judicial proceedings brought under the Act. This section states:

> On timely motion initiated by the executive director, the commission *shall* be permitted to intervene in *any judicial proceeding* under this subchapter or Subchapter G.

TEX.LAB.CODE ANN. § 410.254 (emphasis supplied).

It is undisputed that the commission filed a timely petition in intervention. Under the mandatory provisions of section 410.254, the trial court was required to grant the petition. The commission had the statutory authority to intervene in the case without the burden of showing that it had a "justiciable interest" in the outcome of the proceeding. Therefore, without deciding whether the commission does or does not have a justiciable interest in this case, we hold that the trial court did not abuse its discretion by allowing the commission to intervene absent such a showing.

Point of error four is overruled.

The judgment of the trial court is affirmed.