Patsie CUNNINGHAM, Respondent,

v.

RESEARCH MEDICAL CENTER,
Appellant.

No. WD 61856.

Missouri Court of Appeals,
Western District.

June 24, 2003.

Steven J. Quinn, Kansas City, for Appellant.

Jerrold Kenter, Kansas City, for Respondent.

RONALD R. HOLLIGER, Presiding Judge.

Research Medical Center appeals an award by the Labor and Industrial Relations Commission requiring Research to provide respondent Patsie Cunningham with annual chest x-rays, due to work-related exposure to tuberculosis. Research Medical Center argues that the Commission's award is not supported by substantial, competent evidence and is against the weight of the evidence. We disagree and affirm the Commission's award.

## FACTS

Respondent Patsie Cunningham is employed by Research Medical Center as a nutrition care specialist. The bulk of her job duties are delivering trays of food to patients. In the course of that work Cunningham was exposed to a patient who had tuberculosis. She subsequently tested positive for tuberculosis antibodies through a skin test, and it is undisputed that the positive result was due to her job-related exposure.

She successfully completed a prophylactic course of treatment after her skin tests revealed her exposure to the tuberculosis bacteria. Without prophylactic treatment, Cunningham would have faced roughly a ten percent chance of developing active tuberculosis. Despite receiving such treatment, however, the possibility remains that the bacteria were not completely eliminated by the treatment regimen. If so, the bacteria could remain dormant until some time well into the future. Having successfully completed the treatment regimen, though, Cunningham's chances of developing an active case of tuberculosis have dropped to approximately one percent.

The issue before the court is whether Cunningham should be awarded an annual diagnostic chest x-ray due to her tuberculosis exposure. Dr. McKinsey, the infectious disease specialist who treated Cunningham and who testified (by deposition) on behalf of Research Medical Center, said that Cunningham would need a chest x-ray only if she exhibited symptoms of active tuberculosis: a history of fever for more than two weeks, significant weight loss, and chronic cough. In his opinion, x-rays were not needed in the absence of symptoms. His opinion that annual x-rays were unnecessary rested upon two grounds. First, he stated that it was his "impression" that x-rays would not reveal the presence of active tuberculosis without the patient also exhibiting symptoms of such infection. He acknowledged, however, that he had not reviewed any specific information on that issue. Secondly, he testified that Cunningham's response to treatment would be equally successful if an active case of tuberculosis was diagnosed after the onset of symptoms, as it would be if she were diagnosed by chest x-ray.

Dr. Parmet testified by deposition as Cunningham's expert. His opinion differed somewhat from that offered by Dr. McKinsey. In his opinion, an annual chest x-ray was necessary over the remainder of Cunningham's lifetime to monitor her condition for signs of active infection. In his report (which was admitted into evidence), Dr. Parmet indicated that "Patient will need to be followed over time because there remains a slight risk of developing tuberculosis. This is in accordance with the 'Centers for Disease Control Prevention and Treatment Guidelines for Tuberculosis' as published in the *Control of Communicable Diseases Manual*, sixth edition, 1995, and updated by Centers for Disease Control in 1999."

The administrative law judge found that Cunningham did not establish that annual chest x-rays were reasonably necessary to monitor her condition. The Industrial and

Labor Relations Commission reversed, finding that Cunningham had presented ample evidence that annual chest x-rays were an accepted method of monitoring individuals exposed to tuberculosis and that such a protocol was recommended by the Centers for Disease Control. The Commission found Dr. McKinsey's testimony not reliable on the issue of whether x-rays were useful to diagnose active, but asymptotic, tuberculosis.

In its award, the Commission found that Cunningham faced an increased risk of developing an active tuberculosis infection as a consequence of her work-related exposure. It, therefore, granted Cunningham's "request for an order directing medical treatment to be left open in the form of an annual chest x-ray and subsequent treatment, if necessary...."

Research Medical Center appeals.

## DISCUSSION

In its sole point on appeal, Research Medical Center contends that the Commission erred in ordering Research Medical Center to provide Cunningham with annual chest x-rays. They argue that section 287.140.1, RSMo, requires that an order for future medical treatment be based upon a reasonable probability that such future care will be necessary. Here, they claim, Cunningham's need for a chest x-ray is, at best, remote. Cunningham responds that there was substantial competent evidence supporting the Commission's order and that annual chest x-rays are the proper protocol for the prevention and treatment of tuberculosis. She further contends that the order was not against the overwhelming weight of the evidence

■ Our review of workers' compensation appeals proceeds in a two-step manner. First, we review the evidence in the record in the light most favorable to the award, to determine if the Commission's award is supported by substantial competent evidence. *Coloney v. Accurate Superior Scale Co.*, 952 S.W.2d 755, 758 (Mo. App.1997).

■ If the award satisfies that step, then we review all of the evidence in the record to determine whether the award is against the overwhelming weight of the evidence. *Id.* In this second step, we still view the evidence in the light most favorable to the award, but must evaluate the effect of all of the evidence offered, including that contrary to the Commission's findings. *Davis v. Research Med. Ctr.*, 903 S.W.2d 557, 566 (Mo.App.1995).

Research Medical Center relies upon the principle that a claimant seeking future medical treatment in a workers' compensation proceeding must establish that there is a "reasonable probability" that such future treatment will be needed. *See Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 808 (Mo.App.2000). The essence of Research Medical Center's argument is that the provision of annual x-rays is not reasonably necessary, since Cunningham only has, at worst, a one percent chance of developing active tuberculosis and treatment is equally effective whether the onset of the disease is detected either by x-ray or through the onset of symptoms. Cunningham takes the position that, regardless of the minimal nature of the risk, she still faces an elevated risk of contracting active tuberculosis and that the Commission's award is appropriate in light of the CDC treatment protocols.

■ Essentially, Research contends that because, from a statistical probability analysis, Cunningham has only a one in one thousand chance of developing active tuberculosis in the future that there is only a "possible" need for future medical treatment which does not satisfy the substantial evidence standard. *Mathia v. Contract*

*Freighters, Inc.*, 929 S.W.2d 271, 277 (Mo. App.1996). Nevertheless, the employee seeking future medical aid need not conclusively prove its necessity. *Sutton,* 37 S.W.3d at 808.

 Applying the first prong of the *Davis* criteria, where we must determine whether the Commission's award is supported by substantial, competent evidence, Cunningham has the stronger argument. There was substantial, competent evidence presented to the Commission, in the form of Dr. Parmet's report and testimony, that annual chest x-rays was the appropriate protocol to monitor patients who had been exposed to tuberculosis (and who had developed a positive response to the tuberculosis skin test). With the testimony and other evidence that this protocol was necessary to conduct proper surveillance of Cunningham's condition, she met her burden under *Sutton.* She has shown "a need for future medical care and treatment" that is "reasonably probable and ... founded upon reason and experience." *Rana v. Landstar TLC,* 46 S.W.3d 614, 622 (Mo.App.2001). It is clear from the record that Cunningham has a substantially increased likelihood for future medical treatment than the general population because of her work exposure. We, therefore, find that the Commission's award satisfies the first prong of *Davis.*

With regard to the second prong of *Davis,* we must consider whether the Commission's award is against the weight of the evidence. Here, there is clearly a conflict of expert opinion, where the Commission concluded that the report and testimony of Cunningham's expert was more persuasive than the evidence offered by Research Medical Center. Comparing the evidence offered by the parties, it does not appear that the Commission's findings were against the weight of the evidence. Merely because there is evidence in the record that would support a different outcome does not mean that the Commission's award was against the weight of the evidence. *See Computer Network, Ltd. v. Purcell Tire & Rubber Co.,* 747 S.W.2d 669, 673 (Mo.App.1988). Research Medical Center has not established that the weight of the evidence presented was overwhelming against the Commission's award.

Finding no error by the Commission, Research Medical Center's point on appeal is denied, and the final award entered by the Commission is hereby affirmed.

PAUL M. SPINDEN, Judge, and JAMES M. SMART, JR., Judge, concur.